Marcelo Gondim, SBN 271302
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA AUGUSTA HETZEL SILVA, ET AL** <br><br> Plaintiff, <br><br> vs. <br><br> **KRISTI NOEM, ET AL.** <br><br> Defendants. | Case No. 3:25-cv-03515-AGS-BLM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Fed. R. Civ. P. 65(a) and 65(b) <br><br> Location: Southern District of California <br> Judge: Hon. Andrew G. Schopler <br> Date Action Filed: 12/10/2025 <br><br> Trial Date: Not Yet Set |

5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Patricia Augusta Hetzel Silva, Jorge Roberto Cadilho da Silva Junior, and Albino Granados Ramirez respectfully move this Court for a temporary restraining order and/or preliminary injunction against Defendants Kristi Noem, Secretary of the U.S. Department of Homeland Security; Joseph B. Edlow, Director of the U.S. Citizenship and Immigration Services; and Connie Nolan, Associate Director, Service Center Operations Directorate, to prevent them from being arrested, detained, or placed in removal proceedings in connection with their scheduled I-485 adjustment of status interviews at the San Diego USCIS Field Office.

As set forth in the Complaint, Defendants have newly adopted and aggressively implemented an unlawful practice of arresting marriage-based I-485 applicants at their mandatory interviews, even when those applicants are fully eligible to adjust status under INA § 245(a) and are in a period of authorized stay. Multiple arrests have occurred at this exact field office within the past weeks.

Plaintiffs filed an I-130 Petition for Alien Relative and concurrently filed an I-485 Application to Register Permanent Residence or Adjust Status. Their interview is imminent, and based on prior threats and enforcement policies, they reasonably fear that ICE may attempt to arrest or detain them during or immediately following the USCIS interview.

Plaintiffs' interviews are scheduled as follows:

- Patricia Hetzel Silva — December 16, 2025
- Jorge Cadilho — January 6, 2026 (10:45 a.m.)
- Albino Granados — January 6, 2026 (12:30 p.m.)

Absent immediate relief, Plaintiffs face irreparable harm, including loss of lawful presence, employment authorization, family separation, detention, removal proceedings, and financial and emotional hardship for them and their spouse.

Plaintiffs seek an order to enjoin Defendants from arresting, detaining, or initiating removal proceedings against them at USCIS, thereby allowing them to attend their interview safely, continue their life lawfully in the United States, and preserve their rights pending adjudication of this lawsuit.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65. The standard for both forms of relief is the same. *Stuhlbarg Int'l Sales Co. v. Brush & Co*., 240 F.3d 832 (9th Cir. 2001).

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 172 L.Ed.2d 249, 555 U.S. 7, 77 USLW 4001 (2008). The Court may issue a preliminary injunction plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in

the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

Where a case involves government action, courts also consider the public interest, "*Because 'the party opposing injunctive relief is a government entity' here, the third and fourth factors 'merge.'*". *Nken v. Holder*, 129 S.Ct. 1749, 173 L.Ed.2d 550, 556 U.S. 418, 77 USLW 4310 (2009).

The Ninth Circuit weighs these factors on a sliding scale, such that where there are only "serious questions going to the merits", that is, less than a "likelihood of success" on the merits—a preliminary injunction may still issue so long as "the balance of hardships tips sharply in the plaintiff's favor" and the other two factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting Alliance for the Wild Rockies v. Cottrell , 632 F.3d 1127, 1135 (9th Cir. 2011) ); *Short v. Brown*, 893 F.3d 671 (9th Cir. 2018).

### III.   ARGUMENT

### A. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs have a strong likelihood of success on the merits because Defendants' potential arrest or detention of them at their upcoming I-485 interview is arbitrary, capricious, and contrary to law. Such enforcement actions would directly undermine the statutory framework Congress established to govern the adjustment of status process and would threaten Plaintiffs' fundamental rights under federal law and the Constitution.

**The Arrest-at-Interview Practice Is Arbitrary, Capricious, and Contrary to Law (APA)**

Plaintiffs are likely to succeed on their claim that Defendants' arrest-at-interview practice violates the Administrative Procedure Act because the practice is arbitrary, capricious, contrary to law, and an unexplained departure from longstanding agency conduct. Plaintiffs are fully eligible for adjustment of status under INA § 245(a). Each Plaintiff was inspected and admitted into the United States, each has a properly filed and pending Form I-130 and I-485, and the governing regulations unequivocally provide that applicants for adjustment of status are in a period of authorized stay during the pendency of their applications. See 8 C.F.R. § 245.1(a) (recognizing authorized stay for adjustment applicants) and § 245.2(a)(1)(i) (permitting applicants to remain in the United States throughout adjudication). By definition, Plaintiffs fall squarely within the category of individuals Congress intended to protect under the statutory adjustment framework.

Despite this clear statutory and regulatory structure, Defendants have implemented a practice of arresting adjustment applicants at their mandatory USCIS interviews, transforming a required procedural step into an enforcement trap. This enforcement practice directly contradicts the statutory design of § 245(a), which was enacted to allow certain eligible individuals to adjust status *from within the United States*, without the fear of removal for appearing at a required interview. Congress created this mechanism to promote family unity, enhance procedural fairness, and eliminate the need for eligible noncitizens to depart the United States to obtain lawful permanent residency.

9

Defendants' conduct undermines this congressional purpose by turning an intended protection into a trigger for detention and removal.

Defendants, including DHS and ICE, lack lawful authority to arrest or detain an applicant at a USCIS interview absent a specific enforcement action, such as a warrant or an order for removal. Enforcement at the site of a USCIS interview is particularly inappropriate where, as here, the applicant is pending lawful adjustment proceedings and has fully cooperated with the statutory process. See 8 U.S.C. § 1226(a) (authorizing arrest pursuant to lawful process); 8 C.F.R. § 245.2 (regarding adjustment of status eligibility). Any attempt to arrest Plaintiffs at this juncture would constitute an improper exercise of authority and a direct interference with their statutory rights.

Furthermore, Defendants' arrest-at-interview policy represents a sudden and unexplained departure from decades of consistent agency practice. For generations, USCIS and ICE have refrained from detaining individuals who were statutorily eligible for adjustment and who appeared at mandatory interviews. Absent any rulemaking, notice, justification, or explanation, Defendants have now reversed course—an action that itself violates the APA's requirement for reasoned decision-making. Agencies may not abruptly abandon well-established practices without explanation; doing so renders the action inherently arbitrary and capricious.

The current practice also weaponizes the mandatory USCIS interview. Plaintiffs must appear for their interviews to maintain eligibility; failure to appear results in denial of the I-485. Yet appearing exposes them to immediate arrest. This creates a structurally

absurd and self-defeating situation where complying with immigration law triggers the very enforcement consequence the statute was designed to prevent. Courts routinely reject agency actions that lead to such irrational, contradictory, or punitive outcomes, particularly when those outcomes nullify statutory rights.

Indeed, multiple federal courts have condemned similar ICE and USCIS conduct in the adjustment context. *In You v. Nielsen*, 321 F. Supp. 3d 451 (D. Mass. 2018), and *Lin v. Nielsen*, 377 F. Supp. 3d 556 (E.D. Pa. 2019), courts held that arresting and initiating removal proceedings against adjustment applicants during mandatory USCIS interviews was inconsistent with the statutory scheme, contrary to the intended functioning of INA § 245(a), and violated the APA. These decisions reflect the judiciary's consistent recognition that such practices are unlawful, unfair, and fundamentally incompatible with the adjustment-of-status framework.

For all these reasons, Defendants' arrest-at-interview practice is arbitrary, capricious, contrary to law, unsupported by reasoned explanation, inconsistent with agency regulations, and plainly violative of the APA. Plaintiffs are therefore overwhelmingly likely to succeed on the merits.

### The Practice Violates the Accardi Doctrine

Defendants' arrest-at-interview practice independently violates the Accardi doctrine, which requires federal agencies to follow their own binding regulations and procedural rules. See *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012). Under Accardi, when agency

regulations confer procedural protections or establish a structured process upon which individuals reasonably rely, the agency's failure to adhere to those regulations renders its actions unlawful. Here, DHS and USCIS regulations expressly provide that applicants with properly filed adjustment applications are in a period of authorized stay and are permitted to remain in the United States while their applications are adjudicated. See 8 C.F.R. § 245.1(a); 8 C.F.R. § 245.2(a)(1)(i). These regulations embody the agency's acknowledgement that adjustment applicants are lawfully present for adjudicatory purposes and should not be treated as enforcement targets simply because they appear for a required interview.

ICE's practice of arresting applicants at their mandatory I-485 interviews is directly inconsistent with these binding regulatory protections. By detaining individuals who the regulations declare to be in a period of authorized stay and who are expressly permitted to remain in the country during adjudication, Defendants are disregarding their own governing rules. Such conduct is precisely what Accardi forbids. The agency cannot simultaneously classify Plaintiffs as lawfully present for purposes of the adjustment process while treating them as immediate enforcement targets when they comply with mandatory procedural requirements. This inconsistent and self-contradictory enforcement posture violates the Accardi doctrine and renders Defendants' actions unlawful.

**The Practice Violates Plaintiffs' Due Process Rights**

Defendants' arrest-at-interview policy also violates Plaintiffs' rights under the Due Process Clause of the Fifth Amendment. Plaintiffs possess a constitutionally protected liberty interest in pursuing adjustment of status, a benefit expressly created by Congress and supported by clear statutory and regulatory rights. Once the government establishes a procedure that allows eligible noncitizens to seek lawful permanent resident status without leaving the United States, it may not arbitrarily obstruct access to that process or impose punitive consequences for attempting to utilize it.

Defendants' conduct creates a constitutionally impermissible catch-22. Plaintiffs are legally required to attend their USCIS adjustment interviews; failure to appear results in automatic denial of the I-485 application. Yet attending these mandatory interviews now exposes Plaintiffs to immediate arrest, detention, and placement into removal proceedings. This forces Plaintiffs to choose between (1) abandoning a statutory right Congress guaranteed to them or (2) risking detention at the hands of the very agency charged with adjudicating their benefits. Such a dilemma is fundamentally incompatible with due process principles.

This practice is also profoundly unfair. Plaintiffs complied with every requirement of the adjustment process, filed all mandatory forms, paid required fees, and appeared at interviews exactly as the law demands. Punishing them for following the rules violates basic norms of fairness embedded in due process jurisprudence. It chills the exercise of statutory rights, erodes trust in the immigration system, and deprives Plaintiffs of the meaningful opportunity to have their applications adjudicated—all without any

13

individualized assessment, notice, or procedural safeguards. For these reasons, Defendants' actions violate Plaintiffs' procedural and substantive due process rights.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM

Absent immediate injunctive relief, Plaintiffs face imminent and irreparable harm. Plaintiff Patricia Augusta Hetzel Silva will suffer severe and irreparable harm if arrested at her December 16, 2025, interview. Mrs. Hetzel Silva is married to a U.S. citizen, has a properly filed I-130 and I-485, and is fully eligible for adjustment under INA § 245(a). If detained, she would be immediately separated from her U.S.-citizen spouse, disrupting their marriage and inflicting emotional and psychological harm that cannot be remedied after the fact. She would be transported to the Otay Mesa Detention Center, where conditions are notoriously harsh, and she would lose the ability to participate in the adjudication of her own application. Because detention would result in the effective abandonment of her adjustment application, she would also lose her statutory right to seek lawful permanent resident status, a harm courts consistently deem irreparable. Additionally, detention would jeopardize her ability to maintain financial stability, employment authorization, and continuity of lawful process. These consequences cannot be undone and would permanently alter the trajectory of her life in the United States. Only a TRO can prevent these imminent harms.

Plaintiff Jorge Roberto Cadilho da Silva Junior likewise faces irreparable harm absent Court intervention. Mr. Cadilho is scheduled for his adjustment interview on

January 6, 2026, and, as someone with a pending I-130 and I-485, he is in a period of authorized stay under federal regulations. Nonetheless, recent ICE arrests at the San Diego Field Office demonstrate that he faces a significant and imminent risk of detention solely for appearing at this required interview. If arrested, Mr. Cadilho would be separated from his U.S.-citizen spouse, disrupting the marriage that forms the basis of his eligibility for adjustment of status. He would also be placed in removal proceedings and transferred to Otay Mesa Detention Center, where he would lose the ability to meaningfully pursue the immigration benefit Congress expressly made available to him. Detention would effectively terminate or derail his adjustment application, depriving him of lawful status, work authorization, and stability, all of which constitute irreparable injuries. No subsequent court order could repair the loss of liberty, family unity, and statutory rights that would result from detention at his interview.

Plaintiff Albino Granados Ramirez will also suffer immediate and irreparable harm if ICE is permitted to arrest him at his January 6, 2026, interview. Mr. Granados, like his co-plaintiffs, is the beneficiary of a pending I-130 and the principal applicant on a properly filed I-485. He is married to a U.S. citizen and is statutorily eligible to adjust status. If detained, he would be torn away from his spouse, inflicting severe emotional and familial disruption—and transferred to Otay Mesa Detention Center, where he would lose access to counsel, to evidence, and to the ability to attend or complete the adjudication of his adjustment application. Detention would also jeopardize his pending immigration benefits, likely resulting in denial or abandonment of his application, and

15

would expose him to expedited removal proceedings. The resulting loss of his statutory right to seek lawful permanent residence, employment authorization, financial stability, and family unity constitutes quintessential irreparable harm. These harms are not compensable and cannot be undone once inflicted, making immediate injunctive relief essential.

These harms are ongoing, immediate, and cannot be remedied by monetary damages or any later judicial relief. The loss of lawful status, work authorization, family unity, and household stability constitutes irreparable harm that courts have repeatedly recognized as sufficient to justify preliminary injunctive relief. See *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011).

Courts have consistently recognized that the loss of employment authorization and the resulting inability to work and support one's family constitutes irreparable harm that cannot be adequately remedied through monetary damages alone. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (acknowledging that "the loss of income and benefits … may constitute irreparable injury" in exceptional circumstances where the deprivation threatens subsistence); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (holding that denial of driver's licenses and work authorization inflicts irreparable harm on DACA Recipients "in their everyday lives, including their ability to work, drive, and support their families"); *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) (recognizing that deportation and loss of lawful ability to remain and work cause substantial and irreparable injury beyond economic detriment); *Gonzalez v.*

16

*United States Dep't of Homeland Sec.,* 500 F. Supp. 3d 1115 (E.D. Cal. 2020) (finding irreparable harm where revocation of work authorization and benefits prevented individuals from maintaining income and health insurance).

In addition, Plaintiffs are at imminent risk of detention, removal, and long-term bars to reentry under the Immigration and Nationality Act.

These harms are not speculative; they are imminent and compounding daily. Each passing day without injunctive relief deepens the family's suffering and renders any ultimate favorable judgment less meaningful. Even if Plaintiffs prevail on the merits, no future decision can retroactively restore lost income, health coverage, or erase accrued unlawful presence.

Given the imminent risk of unlawful arrest, forced family separation, loss of work and stability, and deprivation of lawful status, Plaintiffs' need for a temporary restraining order is urgent and compelling. Immediate relief is necessary to prevent irreparable injury while this matter is adjudicated.

## C. THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR AND THE INJUNCTION IS IN THE PUBLIC INTEREST

The balance of hardships in this case clearly tips in favor of Plaintiffs. If Defendants are restrained from arresting Plaintiffs at their USCIS I-485 interview, the government would experience little to no burden. Refraining from enforcement at a scheduled

immigration interview imposes a minimal administrative inconvenience compared to the severe and irreparable harm Plaintiffs and their family would otherwise endure.

In contrast, if Defendants are permitted to arrest Plaintiffs during the interview, they face immediate deprivation of liberty, loss of employment authorization, disruption of lawful status, and separation from their spouse, all of which would irreversibly destabilize their family. The consequences to Plaintiffs' family would be severe and enduring, and monetary remedies or later judicial relief cannot compensate for the emotional, financial, and legal harm caused by such enforcement action.

Courts have consistently held that when the hardship to the applicant far outweighs any burden on the government, injunctive relief is warranted. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("There is always a public interest in preventing aliens from being wrongfully removed, particularly to countries where they may face irreparable harm."); *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) ("The balance of hardships will generally tip in the alien's favor when removal is imminent.").

Protecting families from unnecessary separation and ensuring that individuals can pursue immigration benefits without fear of imminent arrest at USCIS interviews is a significant public concern. Enjoining ICE from taking enforcement action at the interview preserves the integrity and fairness of the statutory adjustment of status process, promotes stability for families, and ensures that due process rights are respected. The public has a strong interest in safeguarding the procedural protections afforded to applicants under the Immigration and Nationality Act and the Constitution.

Moreover, the injunction would serve broader societal interests by supporting family unity and preventing avoidable hardship to Plaintiff and her spouse. The relief requested aligns with judicial precedent recognizing that ICE enforcement actions at USCIS interviews can be restrained when they threaten constitutional and statutory rights. See *Nken v. Holder*, 556 U.S. 418, 435 (2009) (emphasizing that there is a public interest in preventing wrongful removal of noncitizens, particularly where family integrity is at stake); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding that preventing loss of work authorization and disruption to family life serves a strong public interest).

Finally, enjoining Defendants from arresting Plaintiffs at the interview ensures that they can continue to participate in the lawful immigration process without fear of arbitrary detention. It promotes fairness, prevents unnecessary hardship, and upholds public confidence in the immigration system. Maintaining Plaintiffs' ability to attend their USCIS interview safely and lawfully strikes an appropriate balance between governmental interests and the urgent needs of Plaintiffs. Accordingly, both the balance of hardships and the public interest strongly favor the issuance of the requested temporary restraining order.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a Temporary Restraining Order and/or Preliminary Injunction to prevent ICE and DHS

from arresting, detaining, or initiating removal proceedings against Plaintiffs at their scheduled I-485 interview on December 16, 2025, and to preserve her lawful status and employment authorization while this matter is pending. Based and for the aforesaid, Plaintiffs hereby ask the court to grant injunctive relief by:

a) Enjoining ICE and DHS from arresting, detaining, or initiating removal proceedings against Plaintiffs at their scheduled I-485 interview, and any future adjustment-related interview;

b) Preserving Plaintiffs' lawful status and employment authorization pending final adjudication of this action.

c) Ordering DHS and ICE not to issue a Notice to Appear, arrest, or detain Plaintiff while this action is pending; and, and

d) ordering USCIS to take any other measures the court finds necessary.

Respectfully submitted on December 11, 2025.

_____
Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiffs

20

# CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2025, I electronically filed the foregoing PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION by using the CM/ECF system, in accordance with U.S. District Court for the Central District of California's CM/ECF Administrative Procedures and Local Rules. Notice of this filing will be sent out to all parties by operation of the Court's electronic filing system.

Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA AUGUSTA HETZEL SILVA, ET AL** <br><br> Plaintiff, <br><br> vs. <br><br> **KRISTI NOEM, ET AL.** <br><br> Defendants. | Case No. 3:25-cv-03515-AGS-BLM <br><br> **[PROPOSED ORDER] GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** <br><br> Fed. R. Civ. P. 65(a) and 65(b) <br><br> Location: Southern District of California <br> Judge: Andrew G. Schopler <br><br> Date Action Filed: 12/10/2025 <br><br> Trial Date: Not Yet Set |

### [PROPOSED ORDER] GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

**ORDER**

The Court finds that Plaintiffs have met the requirements for a temporary restraining order and preliminary injunction.

**IT IS HEREBY ORDERED:**

22

1. Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is GRANTED.
2. Defendants DHS, USCIS, ICE, and all officers, agents, and employees acting under their supervision ARE TEMPORARILY RESTRAINED from arresting, detaining, or initiating removal proceedings against Plaintiffs Patricia Augusta Hetzel Silva, Jorge Roberto Cadilho da Silva Junior, or Albino Granados Ramirez in connection with their scheduled I-485 interviews or any future adjustment-related interview.
3. Defendants shall permit Plaintiffs to appear at and complete their adjustment of status interviews at the San Diego Field Office without threat of detention, arrest, or removal.
4. This Order shall remain in effect until further order of this Court.

**IT IS SO ORDERED.**

_____     Date: _____

Judge Andrew G. Schopler
United States District Judge