Marcelo Gondim, SBN 271302
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**PATRICIA AUGUSTA HETZEL SILVA**
661 Woodward Street,
San Marcos, CA 92069

*AND*

**JORGE ROBERTO CADILHO DA SILVA JUNIOR**
2661 ½ Worden St.
San Diego, CA. 92110

*AND*

**ALBINO GRANADOS RAMIREZ**
1516 Prescott Drive,
Chula Vista, CA 91915

*AND*

**ANALU SANTE GRIFFIN**
4476 Alabama Street,
San Diego, CA 92116

*Plaintiffss,*

**KRISTI NOEM, SECRETARY, U.S. DEPT. OF HOMELAND SECURITY**
C/O Office of The General Counsel
2707 Martin Luther King Jr. Ave, Se
Washington, Dc 20528-0485

**Civil Case N: 3:25-cv-03515-AGS-BLM**

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT AND THE DUE PROCESS CLAUSE**

1

*AND*
**JOSEPH B. EDLOW, DIRECTOR,
U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**
C/O Office of the Chief Counsel
5900 Capital Gateway Dr., Mail Stop
2120
Camp Springs, MD 20588
*AND*
**CONNIE NOLAN, ASSOCIATE
DIRECTOR, SERVICE CENTER
OPERATIONS DIRECTORATE,**
C/O Office of Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, Md 20588-0009

*Defendants,*

This is Plaintiffs' First Amended Complaint, filed as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1), as no Defendant has filed an answer or responsive pleading.

Plaintiffs, Patricia Augusta Hetzel Silva, Jorge Roberto Cadilho da Silva Junior, Albino Granados Ramirez, and Analu Sante Griffin (collectively, "Plaintiffs"), by and through undersigned counsel, bring this civil action seeking declaratory and injunctive relief and judicial review under the Administrative Procedure Act ("APA") to challenge Defendants' unlawful and newly adopted practice of arresting marriage-based applicants for adjustment of status ("I-485 applicants") at their mandatory USCIS interviews.

All Plaintiffs are immediate relatives of U.S. citizens, are statutorily eligible to adjust status under Immigration and Nationality Act ("INA") § 245(a) and face a credible and imminent threat of arrest at their scheduled or pending USCIS adjustment interviews solely because of prior visa overstays.

Plaintiffs state therefore the following in support of this action:

## **PARTIES**

1.     Plaintiff, Mrs. Patricia Augusta Hetzel Silva, is the beneficiary of a pending I-130 Petition for Alien Relative. Based on this underlying petition, Plaintiff applied for a Form I-485, Application to Register Permanent Residence or Adjust Status, and has an interview scheduled for December 16, 2025.

2.     Plaintiff, Mr. Jorge Roberto Cadilho da Silva Junior, is the beneficiary of a pending I-130 Petition for Alien Relative. Based on this underlying petition, Plaintiff applied for a Form I-485, Application to Register Permanent Residence or Adjust Status, and has an interview scheduled for January 6, 2025.

3.     Plaintiff, Mr. Albino Granados Ramirez, is the beneficiary of a pending I-130 Petition for Alien Relative. Based on this underlying petition, Plaintiff applied for a Form I-485, Application to Register Permanent Residence or Adjust Status, and has an interview scheduled for January 6, 2025.

4.     Plaintiff Analu Sante Griffin is a citizen of Brazil, born on July 9, 1986. She last entered the United States on November 11, 2021, pursuant to a B-2 visitor visa. She is the beneficiary of a pending I-130 Petition for Alien Relative. Based on this

underlying petition, Plaintiff applied for a Form I-485, Application to Register Permanent Residence or Adjust Status.

5.      Defendant, Kristi Noem is the duly appointed Secretary of the Dept. of Homeland Security. In the official capacity as the Secretary, she oversees the United States Department of Homeland Security (hereafter "DHS"), which includes the sub-agency, USCIS, and verifies that the Immigration and Nationality Act (hereafter "INA") regulations are being implemented. She is further authorized to delegate certain powers and authority to subordinate employees of USCIS.

6.      Defendant, Joseph B. Edlow, is duly appointed as the Director of USCIS, with the duty to oversee the adjudication of immigration benefits under the Immigration and Nationality Act, 8 U.S.C. §1101 et seq. This duty includes completing proceedings within a reasonable time, including adjudicating I-130 petitions and adjustment of status applications.

7.      Defendant, Connie Nolan, is sued in her official capacity as the Associate Director for the USCIS Service Center Operations Directorate. Ms. Nolan's Service Center Operations Directorate provides services for persons seeking immigration benefits and provides decisions to individuals requesting immigration benefits, including the San Diego, CA Office, where Plaintiffs' I-485 application for adjustment of status is being processed.

## **JURISDICTION AND VENUE**

8.      Pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 701 and 702, and 28 U.S.C. § 2201, et seq. jurisdiction here is proper and relief is requested under these statutes.

9.      Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. § 555(b) & § 706(1), the Administrative Procedure Act; 8 U.S.C. §1329, Immigration & Naturalization Act, and 28 U.S.C. § 1361, which gives the district courts *"original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States, or any agency therefor to perform a duty owed to the Plaintiffs."*

10.      Furthermore, the Declaratory Judgment Act, 28 U.S.C. 2201, provides that "*in a case of actual controversy within its jurisdiction ... any court of the U.S., upon filing of an appropriate pleading, may declare the rights of any interested party seeking such declaration, whether or not further relief could be sought.*"

11.      28 U.S.C. § 1391(e), as amended, provides that venue for suits against the U.S., a federal agency, or a federal official acting in his or her official capacity, can be brought in any one of the three judicial districts where: 1) where a defendant resides; 2) where a substantial part of the events or omissions giving rise to the claim occurred; or 3) where the Plaintiffs resides if no real property is involved.

12.      Venue is proper in the United States District Court for the Southern District of California because a substantial part of the events or omissions giving rise to the claim occurred within this District.

13.      Furthermore, because the adjudication of Plaintiffs' petition and related immigration benefits occurred within the jurisdiction of the Southern District of

California, and the actions and omissions giving rise to this claim took place here, venue is proper in this District.

14.    Therefore, under 28 U.S.C. § 1391(e)(2) & (3), venue is proper in the U.S. Southern District of California.

## JOINDER OF PLAINTIFFS

15.    Plaintiffs are properly joined in this action pursuant to Rule 20(a)(1) of the Federal Rules of Civil Procedure, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and they share common questions of law and fact. All Plaintiffs reside within the jurisdiction of this Court, specifically within the geographic boundaries of the Northern District of California, and their grievances and claims for relief stem from substantially similar fact patterns and legal issues. Each Plaintiffs alleges harm caused or to be caused by the same Defendants, arising from the same or similar agency actions or inactions, which are subject to review under the Administrative Procedure Act (APA), 5 U.S.C. 701-706.The joinder of Plaintiffs in this matter promotes judicial economy and efficiency by avoiding the unnecessary duplication of proceedings and inconsistent adjudications.

16.    Rule 20(a)(1) permits the joinder of Plaintiffs if two conditions are met: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there are common questions of law or fact. The Ninth Circuit has consistently applied these principles, emphasizing that joinder is appropriate when claims are logically related and arise from a common nucleus of operative facts. For example, in *Johnson v. High Desert State Prison*, 127 F.4th 123, the court reiterated that

Rule 20(a) is designed to promote judicial economy and reduce inconvenience, delay, and added expense. The court also noted that even if the threshold requirements of Rule 20(a) are met, district courts must ensure that joiners compete with principles of fundamental fairness and does not result in prejudice to any party.

17.     Additionally, the Ninth Circuit has clarified that factual similarity is a key factor in determining whether claims arise from the same transaction or occurrence. In *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, the court found that joinder was improper where the claims involved over 100 distinct loan transactions with different lenders, as the factual disparities were too great to support joinder. This case highlights the importance of ensuring that the claims are factually related to satisfy Rule 20(a)(1). Conversely, in cases where Plaintiffs allege harm caused by the same defendants and stemming from similar actions or inactions, as in the present case, joinder is more likely to be deemed appropriate.

18.     Here, the differences among the Plaintiffs, such as their names, types of nonimmigrant visas, dates of admission, expiration of status, names of their U.S. citizen spouses, and timing of their adjustment of status applications, are not significant enough to alter the legal analysis or outcome of this case. These variations are immaterial because all Plaintiffs share the same grievances and seek the same remedy from this Court.

19.     Accordingly, the joinder of Plaintiffs in this action is proper, and this Court has jurisdiction to adjudicate their claims under the APA and applicable federal law.

## STATUTORY AND REGULATORY BACKGROUND

20.     Immigration and Nationality Act § 245(a), 8 U.S.C. § 1255(a), provides that certain aliens "who were inspected and admitted or paroled into the United States" may apply for adjustment of status to lawful permanent residence without leaving the United States.

21.     Congress enacted § 245(a) to create a fair and administratively efficient alternative to the previous system, which required noncitizens to depart the United States to obtain a visa abroad. This provision promotes family unity, stability, and continuity for individuals already present in the U.S.

22.     The statute establishes a clear eligibility framework: applicants must have a qualifying family relationship (e.g., marriage to a U.S. citizen), a properly filed immigrant petition, and admissibility to the United States.

23.     USCIS receives and adjudicates I-130 petitions filed by U.S. citizens or lawful permanent residents seeking to establish a qualifying relationship with a foreign relative.

24.     Approval of the I-130 petition is a prerequisite for adjustment of status under § 245(a). Regulations require that an approved I-130 petition be valid and pending, or filed concurrently with an I-485, for applicants in the United States.

25.     A noncitizen physically present in the U.S. files Form I-485, Application to Register Permanent Residence or Adjust Status, to effectuate lawful permanent residency under § 245(a).

26.    8 C.F.R. § 245.1(a) provides that applicants may remain in the United States while their application is pending, and they are considered to be in a period of authorized stay for purposes of immigration enforcement.

27.    8 C.F.R. § 245.2(a)(1)(i) further confirms that adjustment applicants cannot be removed solely for overstaying a previous nonimmigrant visa if they are eligible for adjustment and have a properly filed I-485 application.

28.    USCIS regulations and longstanding agency practice make clear that attendance at a mandatory adjustment interview does not expose a pending applicant to arrest. Arresting a noncitizen with a pending I-485 violates 8 C.F.R. § 245.1(a) and undermines the statutory intent of INA § 245(a).

29.    Applicants with pending I-485 applications are authorized by defendant DHS to remain in the United States during the adjudication of their applications. *Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345 (E.D. Cal. 2020). This is supported by the statutory framework under 8 U.S.C. 1255, which allows individuals lawfully admitted or paroled into the United States to apply for adjustment of status. The Ninth Circuit has recognized that such applicants are not unlawfully present during the pendency of their applications, as they are in a period of authorized stay *United States v. Bravo-Muzquiz*, 412 F.3d 1052 (9th Cir. 2005), *United States v. Hernandez*, 913 F.2d 1506 (10th Cir. 1990).

30.    In addition to protection from removal, individuals in a period of authorized stay are eligible for work authorization. This eligibility allows them to obtain an Employment Authorization Document (EAD), enabling them to work lawfully in the

United States while their I-485 application is pending. They can even obtain a travel authorization commonly known as "advance parole" which allows them to travel abroad and return to the United States to resume their applications.

31.     It is inconceivable that, a person who is in a period of authorized stay by the DHS, with authorization to work legally in the United States, with eligibility to obtain travel authorization, and even stay their removals could be simply arrested by the very agency that confers such benefits.

## FACTUAL BACKGROUND

32.     Lead Plaintiff Mrs. Augusta Hetzel Silva entered the United States on a B-2 visitor visa on January 21, 2018, and was admitted until July 20, 2018. She remained in the U.S. after his authorized stay expired, creating an overstay.

33.     On May 8, 2025, Mrs. Augusta Hetzel Silva married a U.S. citizen, Mrs. Jenae Percy.

34.     On August 21, 2025, Mrs. Augusta Hetzel Silva and her spouse filed a concurrently I-130 Petition for Alien Relative and I-485 Application to Adjust Status. Mrs. Augusta Hetzel Silva is fully eligible for adjustment under INA § 245(a).

35.     On November 4, 2025, USCIS scheduled Mrs. Augusta Hetzel Silva's mandatory adjustment interview for December 16, 2025, at 9:10 a.m., at 1325 Front Street, San Diego, CA 92101.

36.     Plaintiff Mr. Cadilho da Silva Junior last entered the United States on a B-2 visitor visa on July 7, 2016. He remained in the U.S. after his authorized stay expired, creating an overstay.

37.     On August 12, 2025, Mr. Cadilho da Silva Junior and his spouse filed a concurrently I-130 Petition for Alien Relative and I-485 Application to Adjust Status and it was received by USCIS on August 15, 2025.

38.     USCIS scheduled Mr. Cadilho da Silva Junior's mandatory adjustment interview for January 6, 2026, at 10:45 a.m., at 1325 Front Street, San Diego, CA 92101.

39.     Plaintiff Mr. Granados Ramirez entered the United States on a B-2 visitor visa. He remained in the U.S. after his authorized stay expired, creating an overstay.

40.     On August 21, 2025, Mr. Granados Ramirez and his spouse filed a concurrently I-130 Petition for Alien Relative and I-485 Application to Adjust Status.

41.     USCIS scheduled Mr. Granados Ramirez's mandatory adjustment interview for January 6, 2026, at 12:30 p.m., at 1325 Front Street, San Diego, CA 92101.

42.     Plaintiff Analu Sante Griffin last entered the United States on November 11, 2021, with authorization to remain as a B-2 visitor until May 11, 2022.

43.     Mrs. Griffin has remained in the United States since May 11, 2022, after the expiration of her authorized stay as a visitor.

44.     On November 14, 205 Mrs. Griffin married a U.S. citizen, Daniel Brendan Griffin.

45.     On November 7, 2025, Mrs. Griffin filed an application for adjustment of status (Form I-485) based on her marriage to a U.S. citizen, Daniel Brendan Griffin,

concurrently with or pursuant to an approved Form I-130 Petition for Alien Relative. USCIS confirmed receipt of the application on the same date.

46.    Mrs. Griffin is an immediate relative of a U.S. citizen and is statutorily eligible to adjust status under INA § 245(a), notwithstanding her prior overstay.

47.    Mrs. Griffin, like the other Plaintiffs, faces a credible threat of arrest at her USCIS adjustment interview solely due to her prior visa overstay, despite being in a period of authorized stay based on her properly filed I-485 application.

48.    Attendance at this interview is required to complete the adjustment process.

49.    ICE has recently begun arresting individuals attending USCIS interviews for adjustment, including those eligible under INA § 245(a), creating a credible threat of arrest to Plaintiffs.

50.    This practice represents a departure from longstanding agency practice, as ICE previously did not arrest individuals attending USCIS interviews for adjustment of status based on marriage to U.S. citizens who are eligible to adjust under INA Section 245(a).

51.    Under applicable immigration regulations, individuals with properly filed applications for adjustment of status are considered to be in a period of authorized stay.

52.    Plaintiffs reasonably fear arrest at her interview and have no alternative remedy to challenge this unlawful practice before their interviews.

## **EXHAUSTION OF REMEDIES**

53.    Plaintiffs have exhausted all available administrative remedies, or, alternatively, exhaustion would be futile under the circumstances.

54.    The Supreme Court has ruled that in cases seeking judicial review pursuant to the APA, a Plaintiffs are not required to exhaust non-mandatory administrative remedies. *Darby v. Cisneros*, 509 U.S. 137, 153-54, 113 S. Ct. 2539, 125 L.Ed.2d 113 (1993).

55.    Plaintiffs' situations involve a specific and imminent USCIS interview scheduled, where they face a credible threat of arrest by ICE.

56.    There is no administrative procedure by which Plaintiffs can obtain relief from the risk of arrest at a scheduled adjustment of status interview. USCIS and ICE have no existing mechanism for pre-approval or declaratory guidance to prevent arrest of adjustment applicants eligible under INA § 245(a).

57.    Even if administrative remedies theoretically existed, seeking relief through administrative channels would not provide timely protection, as Plaintiffs' interviews are imminent, and any delay could result in irreparable harm, including detention and disruption of statutory rights.

58.    Requiring Plaintiffs to pursue administrative remedies would be futile, because ICE's practice of arresting adjustment applicants has been implemented without notice or opportunity for individualized relief, and ICE and USCIS would not provide assurances against arrest at the interview.

59.     Accordingly, Plaintiffs are entitled to judicial review under the APA, 5 U.S.C. § 702, and this Court may enjoin the unlawful practice without requiring further exhaustion of administrative remedies.

## RIPENESS DOCTRINE

60.     Under Ninth Circuit precedent, a request for declaratory relief in a challenge to agency action is ripe for judicial review if the action at issue is final and the questions involved are legal ones. *Confederated Tribes of Siletz Indians v. United States*, 841 F. Supp. 1479 (D. Or. 1994). The ripeness doctrine is designed to prevent courts from engaging in premature adjudication and to protect agencies from judicial interference until their decisions are formalized and their effects are concretely felt by the challenging parties. *Duval Ranching Co. v. Glickman*, 965 F. Supp. 1427 (D. Nev. 1997).

61.     However, the doctrine also considers whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention. Courts focus on the "practical likelihood" that the contingencies leading to the injury will occur, and the essential facts establishing the right to declaratory relief must have already occurred *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 123 S. Ct. 2026 (2003), *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000).

62.     In this case, the Plaintiffs are challenging agency actions that have not yet occurred to them but are imminent. The agency has already implemented the same or similar actions in other similar or identically situated claims. This demonstrates a "practical likelihood" that the agency will take the same actions against the Plaintiffs, satisfying the requirement that the injury is sufficiently likely to happen to justify

judicial intervention. The Ninth Circuit has held that when agency actions are final and the issues are legal ones, a request for declaratory relief is ripe for review *Nat. Res. Def. Council, Inc. v. United States EPA*, 966 F.2d 1292 (9th Cir. 1992), *Pub. Util. Dist. No. 1 v. Bonneville Power Admin.*, 947 F.2d 386 (9th Cir. 1991). Furthermore, the essential facts establishing the right to declaratory relief, namely the agency's pattern of implementing similar actions have already occurred, further supporting the ripeness of the claim *Pub. Util. Dist. No. 1 v. Bonneville Power Admin.*, 947 F.2d 386 (9th Cir. 1991).

63.    Plaintiffs fear of their imminent but rather unlawful arrest is founded on several reports from news organizations across the country about the very same practice Plaintiffs want this court to deem unlawful and enjoin Defendants from performing.

64.    KGTV (San Diego) reported on November 14, 2025 [1]:

> **San Diego immigration attorneys report clients detained during green card interviews in crackdown**
> SAN DIEGO (KGTV) — Immigration attorneys in San Diego say their clients are being detained by Immigration and Customs Enforcement officers during routine green card interviews, marking what they describe as an unprecedented tactic at U.S. immigration offices.
> Immigration attorney Tessa Cabrera said her client, a Mexican national who has lived in the U.S. since 2002, was handcuffed and detained during his green card interview. The man had been petitioned for permanent residency by his U.S. citizen daughter.
> "The officer said, I'll be right back and stepped out. And then right then, two ICE officers walked in. They asked him what his name was and then put him in handcuffs," Cabrera said.
> The client was taken to the basement of the federal building and is now detained at the Otay Mesa Detention Center, according to Cabrera.

---

[1] https://www.10news.com/news/local-news/san-diego-immigration-attorneys-report-clients-detained-during-green-card-interviews-in-unprecedented-crackdown

65.    On November 25, 2025, NewsNation reported[2]:

**British mother arrested at green card interview: Report**
*(NewsNation) — A British mother was arrested by ICE while waiting to attend her green card appointment at a U.S. Citizenship and Immigration Services office in San Diego, according to British outlet National World.*
*Katie Paul, 33, was taken into custody by ICE on Nov. 19 while she had her 6-month-old in her arms and her American husband alongside.*
*Paul was awaiting an appointment for her green card visa and was reportedly in the final stages of securing permanent residency.*

66.    NBC News San Diego reported on November 26, 2025[3]

**'I kind of feel betrayed': ICE arrests military spouses at San Diego green card interviews**
*As ICE continues to arrest people in San Diego during their green card interviews, the final step in a legal pathway, some of the people taken into custody have been spouses of military members and veterans, including one who said he felt "betrayed" after serving for decades in the U.S. Marine Corps.*
*ICE has repeatedly said these arrests, which began Nov. 12, are for overstaying visas. But multiple immigration attorneys contend that's never been an issue before, with an exception in federal law for direct relatives of U.S. citizens, including spouses, who are going through the green card process.*
*At least three people were detained Wednesday morning at the U.S. Citizenship and Immigration Services office downtown during what were supposed to be standard green card appointments, according to multiple immigration attorneys who spoke with ABC 10News.*

67.    Times of San Diego reported on November 25, 2025[4]:

**Green card applicants are being arrested at scheduled appointments**
*A GoFundMe page posted on Sunday described the ordeal of a British woman who was arrested at a routine green card appointment in front of her husband and six-month-old infant.*
*"Originally from the UK, Katie has been working for over a year to build a life here after an unexpected pregnancy with her husband," Kate Hastings, the GoFundMe organizer, says in the description. "When the Paul family was at her green card interview to go through the process of updating Katie's paperwork, she was arrested by ICE."*

---

[2] https://www.newsnationnow.com/us-news/immigration/border-coverage/british-mother-arrested-green-card-interview/
[3] https://www.nbcsandiego.com/news/local/ice-arrests-military-spouses-san-diego-green-card-interviews/3937834/
[4] https://timesofsandiego.com/immigration/2025/11/25/green-card-arrested-at-appointments-san-diego/

16

*However, Paul's is hardly the only such arrest. For example, Norwegian-turned-San Diegan Hanne Daguman was arrested at a spousal green card appointment last week; she had apparently let her status briefly lapse last year while planning her wedding.*

68.    Fresnoland reported on October 27, 2025[5]:

**'It's like a nightmare.' ICE now detains immigrants attending permanent resident appointments in Fresno**

*Alejandro Suarez, 31, drove from Bakersfield to Fresno on Oct. 7 for what he believed was a routine <u>U.S. Citizenship and Immigration Services</u> (USCIS) appointment regarding his permanent residency. He has lived in the U.S. since he was 11, works in gardening, and has kept all his immigration paperwork current, including an approved I-130 petition. Suarez said in a phone interview with Fresnoland that he trusted the process and followed his attorney's guidance, who assured him that nothing would go wrong. Instead, following the appointment, immigration officers detained Suarez, escorted him out through a back entrance, and later transferred him to the Golden State Annex detention center.*

*"I was doing everything correctly, trying my best," Suarez said. "I've been a good man, I grew up in this country, and I established my family here. I thought I was doing the correct things. It's like a nightmare, we have always been together."*

*Alejandro and his wife, Elida Herrera, 27, have five children, including a newborn daughter and a son with autism. Herrera is still recovering from a C-section, and the family is struggling to manage daily life without him.*

*Inside detention, Suarez described harsh conditions, from poor food to uncomfortable bedding, and said interactions with staff are demoralizing. Suarez and Herrera said they hope that sharing his story will raise awareness about what he calls the administration's relentless approach to immigration enforcement.*

69.    The fact pattern is the same: I-485 applicants attending their green card interview only to be arrested by ICE and sent to a detention facility for the sole reason: having overstayed their visas prior to the I-485 being filed.

70.    In all these cases, the arrest and subsequent detention of those individuals was unlawful as the Plaintiffs are asking this court to determine that their arrests, in almost identical circumstances, will be unlawful and, thus, enjoined.

---

[5] https://fresnoland.org/2025/10/27/ice-detains-immigrants-attending-permanent-resident-appointments-in-fresno/

71.     The ripeness doctrine also seeks to balance the interests of the parties and the courts. Here, the Plaintiffs have a strong interest in obtaining prompt judicial review to prevent imminent harm, while the agency's interest in crystallizing its policy before judicial review is diminished because it has already implemented the same actions in other cases. This balance weighs in favor of allowing the Plaintiffs to proceed with their complaint for declaratory relief *Eagle-Picher Indus., Inc. v. United States Envtl. Prot. Agency*, 245 U.S. App. D.C. 179, 759 F.2d 905 (1985).

72.     Under Ninth Circuit precedent, the Plaintiffs' complaint for declaratory relief is permissible because the agency actions being challenged, while not yet occurring, are imminent and supported by a demonstrated pattern of similar actions in other cases. The claim is ripe for judicial review as the essential facts establishing the right to relief have already occurred, and the issues involved are legal ones. Therefore, the court should allow the Plaintiffs to proceed with their complaint for declaratory relief.

### CLAIMS FOR RELIEF:

### I.      Violation of the Administrative Procedure Act

73.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

74.     The denials of the I-485 adjustment of status are agency actions under the Administrative Protective Act ("APA").

18

75.     Defendants' practice of arresting individuals at USCIS interviews who are attending mandatory interviews for adjustment of status based on marriage to U.S. citizens and who are eligible to adjust under INA Section 245(a) constitutes final agency action.

76.     This practice constitutes final agency action because it is a definitive statement of enforcement policy, is applied across multiple USCIS field offices, and has direct and immediate legal consequences for applicants, including detention, removal proceedings, and deprivation of statutory benefits.

77.     Defendants' practice has been implemented at multiple USCIS field offices, including the San Diego Field Office, where Plaintiffs' marriage-based adjustment interview has been scheduled.

78.     USCIS scheduled Plaintiffs mandatory adjustment interviews at the San Diego USCIS office located at 1325 Front Street, San Diego, CA 92101.

79.     Plaintiffs are fully eligible to adjust status under INA § 245(a) because they were lawfully inspected and admitted, they are the spouse of a U.S. citizen, they have a properly filed adjustment application, and no statutory bar applies to them.

80.     Despite Plaintiffs statutory eligibility and their lawful presence in a period of authorized stay, Defendants have adopted a practice of arresting similarly situated marriage-based adjustment applicants at their interviews, even when those applicants have properly filed I-485 applications, are in a period of authorized stay, and are entitled to remain in the United States during adjudication.

81.    ICE and USCIS provide no administrative mechanism for an applicant to seek protection from arrest at a mandatory interview, nor do they offer any process to challenge or review the enforcement decision in advance of the interview date. Thus, Plaintiffs lack any adequate alternative remedy before their mandatory interviews.

82.    Defendants' practice contravenes the statutory scheme enacted by Congress in INA § 245(a), which permits eligible applicants to seek adjustment of status from within the United States without being forced to depart or being subjected to arrest for complying with USCIS's interview requirements. The implementing regulations—], particularly 8 C.F.R. § 245.1(a), § 245.1(d)(1), and § 245.2(a)(1)(i), provide that applicants with properly filed adjustment applications are considered to be in a period of authorized stay and may remain in the United States during adjudication.

83.    Defendants have adopted and implemented a practice of arresting marriage-based adjustment applicants at their mandatory USCIS interviews, including individuals like Plaintiffs who are fully eligible to adjust status under INA § 245(a), 8 U.S.C. § 1255(a). This practice constitutes final agency action because it is a definitive, consistently applied enforcement policy with immediate and severe legal consequences, including detention, initiation of removal proceedings, and the deprivation of eligibility for a statutory benefit. This practice has been implemented across multiple USCIS field offices, including the San Diego Field Office where Plaintiffs' interview is scheduled for December 16, 2025.

84.    Despite their lawful presence and statutory eligibility, Plaintiffs face an imminent and credible threat of arrest at their interview due to Defendants' uniform

arrest-at-interview policy. There is no administrative mechanism to challenge or prevent arrest before the interview date, leaving Plaintiffs without an adequate alternative remedy within the meaning of 5 U.S.C. § 704.

85.     Defendants' practice is arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706(2)(A). It represents a drastic departure from longstanding practice without any reasoned explanation. It forces applicants into an impossible dilemma: comply with the mandatory interview requirement and risk arrest, or avoid arrest by abandoning the statutory adjustment process. Courts consistently reject agency actions that create such self-defeating or absurd results. Lin v. Nielsen, 377 F. Supp. 3d 556 (E.D. Pa. 2019).

86.     The practice is also contrary to law because it nullifies the statutory right to pursue adjustment of status from within the United States, in violation of INA § 245(a), 8 C.F.R. §§ 245.1(a), 245.2(a)(1)(i). Defendants have weaponized a mandatory procedural step, turning the adjustment process—intended as a shield—into a sword. Courts condemn such perversions of statutory purpose. *Sanchez v. McAleenan*, 2024 U.S. Dist. LEXIS 52056.

87.     The arrests are also futile as a matter of law because removal proceedings following such arrests frequently result in termination. Immigration Judges may terminate proceedings where DHS cannot sustain removability or where prosecution is contrary to the regulatory scheme. *Fuentes-Barrera v. Barr*, 801 F. App'x 258. The government cannot erect a barrier to completion of a statutory process and then claim

the applicant is ineligible for failing to complete it. *In re Arlin Bojorquez-Vasquez*, 2021 Immig. Rptr. LEXIS 7464.

88.    The practice is further contrary to legislative intent. Congress enacted INA § 245(a) precisely to allow eligible individuals to adjust status without leaving the United States, promoting family unity and reducing unnecessary hardship. Defendants' practice transforms a statutory pathway into a trap, contradicting the purpose of the statute and producing the very harms Congress enacted § 245(a) to prevent.

89.    For all these reasons, Defendants' actions constitute arbitrary and capricious agency action, exceed statutory authority, violate legislative intent, and must be set aside under the Administrative Procedure Act.

## II.    <u>Violation of the Accardi Doctrine Through Arrests at I-485 Interviews</u>

**90.**    The Accardi line of authority, as recognized and applied in the Ninth Circuit, reinforces that agencies must follow their own binding rules and procedures, particularly where those procedures confer protections and reliance interests on individuals; failure to adhere to such rules is reviewable and may require relief without a showing of "substantial prejudice." See *United States ex rel. Accardi v. Shaughnessy* 347 U.S. 260 (1954); *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012). Because Defendants' arrest practice contradicts the regulatory framework protecting pending I-485 applicants, the practice is reviewable under the APA and must be set aside.

91.    Defendants' arrest-at-interview practice nullifies this statutory right, punishes applicants for attending mandatory interviews, and undermines the very

adjustment mechanism Congress created. For Plaintiffss specifically, Defendants' practice places them under an imminent and credible threat of arrest at their scheduled interviews, thereby obstructing their ability to pursue the statutory benefit Congress expressly intended them to have access to.

92.    The practice violates the Accardi doctrine, because DHS fails to follow its own regulations governing adjustment of status—regulations intended to confer important benefits and procedural protections on applicants. Agencies must adhere to their own rules. *Nelson v. INS*, 232 F.3d 258; *Lopez v. FAA*, 318 F.3d 242; *Montilla v. INS*, 926 F.2d 162. By arresting applicants during I-485 interviews, DHS disregards its own regulatory framework and unlawfully deprives Plaintiffs of procedural rights guaranteed by 8 U.S.C. § 1255 and its implementing regulations.

93.    For all these reasons, Defendants' actions constitute arbitrary and capricious agency action, exceed statutory authority, violate legislative intent, and must be set aside under the Administrative Procedure Act.

**Not Being Statutorily Prohibited Is Not The Same As Being Expressly Authorized**

94.    The newly adopted practice of ICE detaining applicants for adjustment of status during their immigration interview is not expressly authorized by U.S. federal statute or 9th Circuit precedent, neither it is explicitly prohibited. Federal statutes, such as 8 USCS § 1255, outline the adjustment of status process but do not address the specific issue of detaining applicants during their interviews. Similarly, 8 USCS § 1225.

provides for mandatory detention in certain circumstances but does not explicitly authorize or prohibit detention during adjustment of status interviews.

95.    The statutory language of 8 U.S.C. 1226(a) governs the detention of non-citizens "pending a decision on whether the alien is to be removed from the United States." This language suggests that the provision applies to individuals who are actively undergoing removal proceedings or whose removal is under consideration. *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019). The Ninth Circuit has recognized that 1226(a) is the default detention statute for non-citizens in removal proceedings, except for those subject to mandatory detention under 1226(c) *Hernandez Avilez v. Garland*, 48 F.4th 915 (9th Cir. 2022), *Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830 (2018). Importantly, the statute does not explicitly extend its scope to individuals who are in a period of authorized stay or attending their green card interviews. Such individuals are not necessarily "pending a decision on whether [they are] to be removed from the United States," as their immigration status may not yet be in question. The discretionary authority granted under 1226(a) is tied to the context of removal proceedings, and there is no indication in the statutory language that it encompasses individuals who are lawfully present or actively pursuing lawful permanent resident status through green card interviews. Furthermore, the distinction between 1226(a) and 1226(c) reinforces the limited scope of the former. While 1226(c) mandates detention for certain categories of non-citizens, such as those involved in criminal offenses or terrorist activities, 1226(a) applies more broadly but still within the framework of removal proceedings. The absence of any reference to individuals in authorized stay or attending green card

interviews in either provision suggests that Congress did not intend for such individuals to fall within the ambit of 1226(a) *Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830 (2018).

96.    ICE's authority under 8 U.S.C. 1226(a) does not expressly include the arrest of individuals who are in a period of authorized stay or attending their green card interviews. The statutory language and its interpretation by the Ninth Circuit indicate that 1226(a) applies to non-citizens in removal proceedings, and there is no basis to extend its scope to individuals whose immigration status is not under question. Therefore, ICE's actions in such cases would exceed the authority granted under 1226(a).

97.    Here, the Plaintiffs are still in a period of authorized stay and not subject to removal proceedings at the time of their interview and likely arrest. They might be placed in removal proceedings in order for ICE to justify their arrest.

98.    Case law, including decisions like *You v. Nielsen*, 321 F. Supp. 3d 451. and , *Sanchez v. McAleenan*, 2024 U.S. Dist. LEXIS 52056. has criticized ICE's practice of detaining individuals during adjustment of status interviews as inconsistent with the statutory framework and intent of the Immigration and Nationality Act (INA). Courts have noted that such practices can undermine the adjustment of status process, which is intended to provide a pathway to lawful permanent residency, and have raised concerns about due process violations. For example, in *You v. Nielsen*, 321 F. Supp. 3d 451, the court found that detaining an applicant at a green card interview likely violated the INA by using the adjustment process as a "gotcha" mechanism rather than as a protective measure.

99. In the 9th Circuit, there is no binding precedent explicitly authorizing or prohibiting this practice. However, courts have generally emphasized the need for ICE to adhere to the INA's statutory scheme and avoid actions that could render the adjustment process ineffective or unjust . *You v. Nielsen*, 321 F. Supp. 3d 451, *Patel v. Barr*, 2020 U.S. Dist. LEXIS 253496.

100.    Thus, while the practice is not expressly authorized or prohibited by statute or 9th Circuit precedent, it has been subject to significant judicial scrutiny and criticism for potentially violating the INA and due process protections.

101.    U.S. Immigration and Customs Enforcement (ICE) has recently begun a practice of arresting individuals who are attending USCIS interviews for adjustment of status based on marriage to U.S. citizens and who are eligible to adjust under INA Section 245(a) simply for having them overstayed their visas.

102.    This practice represents a departure from longstanding agency practice, as ICE previously did not arrest individuals attending USCIS interviews for adjustment of status based on marriage to U.S. citizens who are eligible to adjust under INA Section 245(a) as under applicable immigration regulations, individuals with properly filed applications for adjustment of status are considered to be in a period of authorized stay by defendant DHS.

103.    Defendant's practice of arresting individuals like the Petitioner during mandatory USCIS interviews contradicts the statutory and regulatory framework that allows eligible individuals to adjust status while remaining in the United States.

104.    In summary, the fact that such arrests are not prohibited does not make them lawful, especially when the INA itself provides a carved-out exemption to the rule regarding ineligibility for adjustment of status for applicants who overstayed their visas or worked without authorization. The regulations in the Code of Federal Regulations (CFR) that correspond to INA section 245(c)(2) regarding bars to adjustment of status are found in 8 CFR § 245.1(b)(4) and (b)(6), as well as 8 CFR § 1245.1(b)(4) and (b)(6).

105.    According to USCIS' Chapter 3 of the Policy Manual, based on the INA:

> *An applicant is barred from adjustment of status if the applicant is in an unlawful immigration status on the date of filing the adjustment application. This bar to adjustment does not apply to:*

- ***Immediate relatives**;*
- *Violence Against Women Act (VAWA)-based applicants;*
- *Certain alien doctors and their accompanying spouse and children;*
- *Certain G-4 international organization employees, NATO-6 employees, and their family members;*
- *Special immigrant juveniles;*
- *Certain members of the U.S. armed forces and their spouses and children; or*
- *Employment-based applicants who meet the <u>INA 245(k)</u> exemption.*

106.    As such, arrests at green card interviews, though not expressly prohibited by the INA, violate the same INA by making Section 245(c)(2) basically invalid, if the applicant can be arrested when he or she is complying with that rule and following the law.

## III.    <u>Violation of the Administrative Procedure Act - Agency Action Contrary to Legislative Intent</u>

27

107. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

108. Defendants' practice of arresting individuals at USCIS interviews who are attending mandatory interviews for adjustment of status based on marriage to U.S. citizens and who are eligible to adjust under INA Section 245(a) constitutes final agency action.

109. ICE's practice of arresting individuals at USCIS interviews who are eligible for adjustment of status under INA Section 245(a) has been implemented across USCIS field offices, including the Los Angeles field office where Plaintiffs' interview is scheduled.

110. There is no other adequate remedy in court for Plaintiffs to challenge this practice before his scheduled interview. Defendants' practice is contrary to the legislative intent of the Immigration and Nationality Act.

111. Congress created the adjustment of status process under INA Section 245(a) specifically to allow certain eligible individuals to obtain lawful permanent resident status without having to depart the United States.

112. Prior to the enactment of INA Section 245(a), aliens already inside the United States could acquire immigrant status only by temporarily leaving the United States to secure an appropriate visa at a U.S. consular office abroad.

113. The legislative history of INA Section 245(a) highlights Congress's clear and purposeful intent to create a fair and reliable pathway to lawful permanent residence for eligible individuals already present in the United States. This provision was enacted

to promote family unity and provide a practical alternative to the burdensome and disruptive requirement of departing the United States to apply for residency abroad. By allowing individuals to remain in the country while they adjust their status, Congress sought to foster stability, ensure continuity for families, and reduce unnecessary barriers in achieving legal status.

114. Defendants' practice of arresting individuals at mandatory USCIS interviews completely undermines this intent, transforming the adjustment process into a dangerous and unpredictable ordeal. It effectively discourages eligible individuals from pursuing the process by instilling fear and uncertainty. Instead of serving as a mechanism to facilitate lawful permanent residence, the adjustment process becomes a mechanism of entrapment, leading to detention and potential deportation. This result directly contradicts Congress's goals, turning what was intended as a humane policy into an instrument of hardship. This practice further creates an absurd and self-defeating outcome where individuals who comply with statutory and regulatory requirements find themselves penalized for doing so. Courts have long condemned agency actions that produce such nonsensical results, particularly when they contradict legislative goals. The practice does not merely impose an additional burden on applicants; it fundamentally nullifies their right to adjust status by making compliance with the adjustment process effectively untenable. Eligible individuals who enter the adjustment process in good faith with the expectation of completing the pathway to lawful status are instead met with punitive measures that violate the very purpose of the statutory scheme.

115.    Defendants' actions also have a broader chilling effect. The fear induced by such enforcement practices discourages not only the individual applicants directly impacted but also countless others who might otherwise pursue lawful pathways. Such practices erode trust in the immigration system, alienating individuals from engaging with a process meant to encourage compliance with immigration laws. This chilling effect is inconsistent with principles of fairness and good governance.

116.    Moreover, the importance of adhering to legislative intent cannot be overstated. Congress enacted INA Section 245(a) to address an issue of national importance: the need to provide a balanced, humane, and administratively efficient means of resolving status for those present in the United States. Defendants' practice effectively dismantles this framework, undermining the statutory scheme as envisioned by Congress and causing widespread harm to vulnerable individuals and families. Using mandatory interviews as an enforcement tool reflects an overreach of authority and a departure from the principle that agency action should further, not frustrate, legislative purposes. Such weaponization of mandatory procedural steps undermines the statutory right of eligible individuals and destabilizes the integrity of the adjustment process. The judiciary has consistently intervened to prevent such actions, emphasizing that agency practices must align with legislative purposes and broader principles of fairness, consistency, and justice. Defendants' actions reflect a complete disregard for these principles, and corrective measures must ensure the adjustment process remains a path to security and stability, not fear and disruption.

117.    This practice creates an absurd result where the very process designed by Congress to allow eligible individuals to regularize their status becomes a trap leading to their detention and possible removal.

118.    Courts have consistently rejected agency interpretations that lead to absurd results or that frustrate the policy that Congress sought to implement.

119.    Courts have blocked government actions, despite apparent statutory authorization, when such actions constitute an abuse of discretion, weaponization of enforcement authority, or are contrary to public policy. Such decisions stem from the principle that government actions, when unfettered and arbitrary, can undermine the trust in agencies tasked with implementing and enforcing laws. When agencies act contrary to their statutory purpose or engage in conduct that creates insurmountable barriers for individuals attempting to comply with the law, such actions are not only unreasonable but also fundamentally unjust. These enforcement mechanisms can create a chilling effect, where eligible individuals reasonably fear engaging with the adjustment process designed to regularize their status due to concerns over detention or removal. The failure to adequately consider the implicit effects of such enforcement practices further evidences an abuse of discretion, as it disregards the coherent and purposeful legislative intent behind the adjustment of status framework established by Congress. The judiciary has consistently emphasized the importance of administrative action in furthering, rather than frustrating, the constitutional and statutory rights of affected individuals. In light of this, government actions that subvert these rights through indirectly punitive practices or weaponization of mandatory procedural steps must be

corrected to maintain the integrity of the legal process and safeguard the rights of vulnerable individuals.

120. Defendants' practice of using the mandatory adjustment interview process as an enforcement trap represents a severe and improper misuse of the agency's authority that directly undermines the legislative intent of the adjustment of status process. By targeting individuals who are attending mandatory USCIS interviews—an essential step in the lawful path to gain permanent residency—Defendants effectively create a barrier that deters eligible individuals from pursuing their statutory right. This practice forces applicants into an untenable position, where compliance with immigration procedures inherently subjects them to the risk of detention or removal, despite their eligibility to regularize their status under existing law.  Such enforcement tactics disrupt the delicate balance Congress intended to strike through the adjustment of status framework, which was specifically designed to provide a streamlined and fair pathway for individuals already within the United States to establish lawful permanent residency. Instead of allowing the adjustment process to serve its intended purpose as a mechanism for remedying immigration status, Defendants have perverted it into an opportunity for punitive enforcement that could have far-reaching consequences. In addition to contradicting legislative intent, this practice erodes public trust in immigration agencies. Eligible applicants, many of whom are pursuing family reunification or other humanitarian avenues, are left with no meaningful avenue to comply with the law without jeopardizing their liberty or prospects of remaining in the United States.

121.     This chilling effect undermines the long-established principle that immigration regulations should facilitate compliance rather than discourage it through fear or coercion. Moreover, Defendants' actions fail to account for the significant reliance interests of applicants and their families, disrupting lives and separating families unjustly. Such misuse of enforcement authority introduces chaos and uncertainty into a system that Congress designed to bring order and fairness. The practice, if continued, risks transforming a lawful process into an arbitrary and punitive trap, contrary to both statutory principles and public policy considerations. Such tactics are fundamentally at odds with the fair administration of the law and the protections that Congress sought to establish through the adjustment of status process.

## IV.     **VIOLATION OF PLAINTIFFS'S DUE PROCESS RIGHTS**

122.     Plaintiffs realleges and incorporates the referenced paragraphs above.

123.     Plaintiffs possesses a constitutionally protected liberty interest in pursuing the statutory right to apply for adjustment of status under INA § 245(a). Courts recognize that when a statute creates a substantive right to seek a benefit, the government may not arbitrarily obstruct access to it.

124.     Plaintiffs have complied with every statutory and regulatory requirement for adjustment of status. USCIS accepted their properly filed I-130 and I-485, placing them in a period of authorized stay and entitling them  to adjudication of their application.

125.     Defendants' practice of arresting applicants at mandatory adjustment interviews deprives Plaintiffs of their liberty interest without adequate process. The

practice creates an unconstitutional "catch-22": an applicant must appear for the interview to maintain eligibility, but appearing subjects the applicant to immediate arrest, detention, and initiation of removal proceedings. Courts consistently reject government actions that deliberately entrap individuals in a process designed to harm them. *Sanchez*, supra; *Bojorquez-Vasquez*, supra.

126.    The practice is fundamentally unfair and violates basic procedural due process principles. It chills the exercise of statutory rights, deters eligible applicants from pursuing lawful immigration benefits, and imposes severe consequences without notice, opportunity to be heard, or any meaningful procedural safeguards.

127.    As applied to Plaintiffs, the threat is real and imminent. Their interview is scheduled at the San Diego Field Office, where comparable arrests have already occurred. The uncertainty and fear caused by Defendants' policy impede their ability to exercise their statutory rights, deprive them of the opportunity Congress guaranteed, and threaten them with detention and removal despite full eligibility for adjustment.

128.    Accordingly, Defendants' arrest-at-interview practice violates Plaintiffs' rights under the Due Process Clause of the Fifth Amendment and must be enjoined.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf consisting of the following:

(1)    Assume jurisdiction and proper venue over this action.

(2)    Declare that Defendants' practice of arresting noncitizens at USCIS marriage-based adjustment interviews despite their eligibility to adjust status under INA § 245(a) and their presence at a mandatory interview is contrary to law, violates the Administrative Procedure Act, 5 U.S.C. § 706, and is unlawful as applied to Plaintiffs;

(3)    Declare that Plaintiffs are in a period of authorized stay pursuant to their pending and properly filed Form I-485 application for adjustment of status.

(4)    Enjoin Defendants, including ICE and USCIS officers acting under their direction, from arresting, detaining, removing, or otherwise taking Plaintiffs into custody in connection with their scheduled adjustment of status interview, or any future interview related to their pending I-485;

(5)    Order Defendants to permit Plaintiffs to attend and complete their interviews at 1325 Front Street, San Diego, California, without threat of arrest or detention;

(6)    Enjoin Defendants from applying or enforcing any policy, practice, or pattern of targeting marriage-based adjustment applicants for enforcement actions at USCIS interviews when such applicants are prima facie eligible to adjust status;

(7)    Award Plaintiffs reasonable costs and attorney's fees under the Equal Access to Justice Act, 22 U.S.C. § 2412; and

(8)    Award such further relief as the Court deems just, necessary, or proper.

November 11, 2024

Respectfully submitted,

Marcelo Gondim (SBN 271302)
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiffs